SAMUEL B. CAMPBELL et al., Respondents, *v.* NATHAN N. SEAMAN, Appellant.

Where one manufacturing brick upon his lands uses a process in burning by which noxious gases are generated, which are borne by the winds upon the adjacent lands of his neighbor, injuring and destroying trees and vegetation, this is a nuisance, and the party injured may maintain an action to recover damages and to restrain the use of the process com-plained of.

It is immaterial that the damage done is to ornamental trees and shrubbery only; articles of luxury are as much under the protection of the law as articles of necessity.

So, also, it is immaterial that the injury is only occasional. It is sufficient to authorize an injunction that injury may be expected whenever a kiln is burning, unless the poisonous gases are blown away from plaintiff's land.

It does not affect plaintiff's right to an injunction that the brick yard was used before plaintiff purchased his land.

No acquiescence short of twenty years will bar one from complaining of a nuisance, unless by some act or omission he has induced the party causing the nuisance to incur large expenditures, or to take some action upon which an estoppel may be based.

If a party may acquire a prescriptive right to continue a nuisance, it can only be by continuous use for twenty consecutive years.

A writ of injunction can rightfully be demanded to prevent irreparable injury, interminable litigation and a multiplicity of suits, and its refusal in a proper case, is error, to be corrected in an appellate court..

The discretion of the court below in granting or refusing the writ is not an arbitrary one; and, if improperly exercised, may be corrected on appeal.

Where the provisions of a judgment entered upon the report of a referee as to an injunction are broader and more unlimited than authorized by the report, the error cannot be corrected upon appeal from the judgment; the remedy of the party aggrieved is to move to set aside or to correct the judgment.

It is not an objection to a judgment of General Term that one of three judges hearing the appeal died before the decision, and that it was made by the other two ; two judges may hold a General Term and decide cases there argued.

The authorities on the question of nuisance, particularly as applicable to brick burning, collated.

(Argued December 13, 1875 ; decided January 21, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought to recover damages resulting from an alleged nuisance, and to restrain the continuance thereof.

The referee found the following facts : " The plaintiffs are the owners of thirty to forty acres of land adjoining the village of Castleton, upon the Hudson river, about six miles below the city of Albany; there are native yellow and white pines upon the said land which grew in the forest, many of the most comely of which have been saved by the plaintiffs as a protection against winds and as an ornament to the grounds. The plaintiffs have caused many of the forest trees to be removed, and have greatly ornamented and improved the said grounds by making gravel roads and walks through the same, and by planting Norway spruce and other ornamental and shade trees, and have erected an elegant dwelling-house upon the said premises, with barns and other out-houses, and therein have laid out large sums of money, and have made thereon a fine garden for grapes, plums, etc. ; that said grounds have been graded, terraced, and have been

rendered very valuable by the moneys expended thereon by these plaintiffs.

That defendant, whose lands adjoin the said lands of the said plaintiffs, has for two years or more been manufacturing brick upon his own land and adjoining the plaintiffs' said lands; that in the manufacture of such brick he mixes anthracite coal dust with the clay and sand in moulding his brick, and in constructing his kiln a portion of the brick are left out and the space filled with the anthracite coal dust; this is done in the outer portions of the kiln, and the object obtained is; this coal dust, when the kiln becomes heated, takes fire and gives sufficient heat to burn the brick to the outer layers. The burning of the kiln under this process causes a sulphurous acid gas, for at least the last two days of the burning, to escape from the kiln, which is very poisonous and injurious to persons who inhale it, and is very destructive to many kinds of vegetation. The evidence in the case shows that this gas from the defendant's kiln has on several occasions killed the foliage on the plaintiffs' white and yellow pines, their Norway spruce; and has, after repeated attacks, killed and destroyed from 100 to 150 of their valuable pine and Norway spruce trees, and has injured their grape vines and plum trees. The evidence is very conclusive as to the destructive qualities of this sulphurous acid gas to the pine and Norway spruce trees, and to grape vines and plum trees. The plaintiffs have already suffered considerable damage from the defendant burning brick at his kiln, and if continued they must inevitably continue to suffer and their property be greatly depreciated in value."

The referee also found that, " on the premises of the defendant where he has and does manufacture brick, as mentioned in the pleadings and evidence in this cause, the same have been known and used as a brick-yard for over twenty-five years; and at the time the plaintiffs improved and beautified their property they knew that the property of the defendant had been previously applied to such use, and that in such use and manufacture of brick anthracite coal and coal dust was

used and employed. Near to the premises of the plaintiffs one Philip H. Smith has a brick-yard, and has employed the same in the manufacture of brick by the use of anthracite coal in the same manner as the defendant has done for the period of five years; and the Hudson River Railroad Company, whose road runs in front of the plaintiffs' premises, and near to their fruit and ornamental trees, have on the average, for more than four years past, run on said road and by said premises of the plaintiffs, daily, at least twenty-seven trains of cars propelled by locomotives burning and using the same description of coal as the defendant. That the burning of brick on the premises of the defendant by the use of anthracite coal dust does not affect the premises of the plaintiffs injuriously, except in case of a southerly wind at the time of burning; and such injuries have happened only at times, and not continually, while defendant has occupied said premises. That anthracite coal, in the manner used by the defendant, has been employed in England for more than half a century, and for nearly the same period of time in the United States, and is now generally used by all manufacturers of brick in the State of New York and elsewhere. That by the use of anthracite coal in the manufacture of brick a much larger quantity of good hard brick is produced, and at much less expense, than by burning kilns of brick exclusively with wood; and brick cannot be successfully manufactured for market by the use of wood alone and compete in market with those who use anthracite coal in the manufacture. That the prohibition of the use of coal by the defendant in the manufacture of brick upon his premises is of great damage to the defendant, and substantially destroys the value of the defendant's property as a brick-yard; that as a brick-yard, employed in the manufacture of brick by the common and ordinary process with the use of mineral coals, it is very valuable and capable of producing from 3,000,000 to 4,000,000 of brick annually at good profit to the defendant.

The referee found, as conclusions of law, that plaintiffs were entitled to recover the damage proved to have been sustained,

and to an injunction restraining defendant from burning brick at the place named by the process above described.

*Geo. W. Miller* and *W. S. Hevenor* for the appellant.   An injunction could not be granted unless imminent danger of great and irreparable damage was shown.   (*Wasson* v. *Sanborn*, 45 N. H., 169; *Prosser* v. *Randall*, 7 Port. [Ala.], 435; *Ray* v. *Lewis*, 10 Ala., 63; *Porter* v. *Witham*, 17 Me., 292; *Jordan* v. *Woodward*, 38 id., 424; *Morse* v. *Machias W. P. Co.*, 42 id., 119; *Varney* v. *Pope*, 60 id., 192, 195; *Forte* v. *Groves*, 20 Md., 188; *Wynstanley* v. *Lee*, 2 Swanst., 336; *Earl of Ripon* v. *Hobart*, 3 Myl. & K., 169; *Middleton* v. *Franklin*, 3 Cal., 238; *Eastman* v. *Amos. Man. Co.*, 47 N. H., 71; *Burnham* v. *Kempton*, 44 id., 88; *Bean* v. *Coleman*, id., 593; *Hodgman* v. *Richards*, 45 id., 29; 1 Daniells' Ch., 609; Ang. on W. C., 174; *Dawesville* v. *Dupont*, 18 B. Mon., 800; *Hood* v. *N. Y. and N. H. R. R. Co.*, 23 Conn., 609; *Bolster* v. *Callerline*, 10 Ind., 117; *Whittlesey* v. *H. and F. R. R. Co.*, 23 Conn., 421; *Grey* v. *O. and P. R. R. Co.*, 1 Grant's Cas., 411; 3 Cal., 238; *Heiskell* v. *Gross*, 7 Phil., 317; *Clark's Appeal*, 62 Penn., 450; *Jones* v. *Powell*, Palm., 536; Waterman's Tres. on P. R., 577 [note]; *Irwin* v. *Dixon*, 9 How. [U. S.], 10; *Zabriskie* v. *J. C. and B. R. R. Co.*, 2 Beas., 314; *Robinson* v. *Pettinger*, 1 Green Ch., 57   *Gilbert* v. *Showerman*, 23 Mich., 448; Hil. on Injunction [2d ed.], 306.)   The acts of the defendant did not amount to a public or private nuisance. (Hil. on Injunction [2d ed.], 306; *Attorney-General* v. *Cleaver*, 18 Ves., 211; *Duke of Grafton* v. *Hilliard*, id., 219; *Tickenor* v. *Wilson*, 4 Halst. [N. J. Ch.], 197; *Crowder* v. *Tinkley*, 19 Ves., 617; *Attorney-General* v. *Shef. Gas Co.*, 19 Eng. L. and Eq., 6; 3 DeG., McN. & G., 316; *Ellis* v. *State*, 7 Black, 534; *Cross' Case*, 2 C. & P., 483; *Richard's Appeal*, 57 Penn.,     ; *Rhodes* v. *Dunbar*, id., 274; *Bamford* v. *Turnley*, 3 B. & S., 211; 113 E. C. L., 80; *Phœnix* v. *Com. of Em.*, 1 Abb., 474; *Grey* v. *O. and P. R. R. Co.*, 1 Grant, 412; *Huckenstein's Appeal*, 70 Penn.,

102; *Gilbert* v. *Showerman*, 23 Mich., 448; Washb. on E. and S. [2d ed.], 592; *Brown* v. *Calhoun*, 2 Ire., 201; *Bradsher* v. *Lee's Heirs*, 3 id., 505; *Wasson* v. *Sanborn*, 45 N. H., 169; *Attorney-General* v. *Perkins*, 2 Dev., 38; *Wier's Appeal*, 24 P. F. S., 231.) Plaintiffs, by acquiescence for many years, are precluded from equitable relief. (Add. on Torts [Am. Students' ed.], 99; *Williams* v. *Earl of Jersey*, 1 Cr. & Ph., 97; *Cooper* v. *Hubbard*, 30 Beav., 160; *Cotchings* v. *Bassett*, 3 L. J. [Ch.], 286; *Ellis* v. *State*, 7 Black, 354; *Cross' Case*, 2 C. & P., 483; 2 Russ. on Crimes, 430; *Elliotson* v. *Futhan*, 4 B. N. C., 134; 2 Crabb's R. P., § 2464 [24 L. Lib., 701]; *Gilbert* v. *Showerman*, 23 Mich., 448; *Attorney-General* v. *Shef. Gas Co.*, 3 DeG., McN. & G., 322; *Burkart* v. *Houghton*, 27 Beav., 431; *Heenan* v. *Denai*, 18 Grant Ch., 438; *Bankhart* v. *Houghton*, 2 DeG., McN. & G., 940; *Dann* v. *Spurrier*, 7 Ves., 235, 236; *Rochdale Can. Co.* v. *King*, 2 Sim. [N. S.], 88; *Jones* v. *Powell*, Palm. 538; Stephen's Com. [17th ed.], 402; 3 Kent's Com. [m. p.], 448.) The doctrine of prescription intervenes for the protection of defendant against the interposition of equitable relief, even if he should be liable upon the case for damages. (*Crossley* v. *Lightbower*, L. R., 3 Eq., 277; *Lutrell's Case*, 4 Rep., 47; 3 Cruise on R. P. [m. p.], 532; Add. on Torts [Am. Students' ed.], 53; *Elliotson* v. *Feetham*, 4 B. N. C., 134; *Bliss* v. *Hall*, 5 Sc., 404; 3 Kent's Com., 448; *Rex* v. *Nevilles*, Peake, 43; Washb. on E. and S. [2d ed], 592; *Smith* v. *Phillips*, 8 Phila. ; *Crump* v. *Lamber*, L. R., 3 Eq. Cas., 409.) Defendant is engaged in a lawful and necessary business, necessary for trade and commerce, and should not be enjoined. (Broom's Leg. Max., 84; 2 Sel. N. P., 1091; 1 M. & S., 95; *Hole* v. *Barlow*, 4 C. B. [N. S.], 336; *Attorney-General* v. *Cleaver*, 18 Ves., 211; *Duke of Grafton* v. *Hilliard*, id., 219; *Ticknor* v. *Wilson*, 4 Hal. [N. J. Ch.], 197; 83 Mass., 137; Wash. on Eas., etc., 593; 2 N. J. Ch., 208.)

*G. P. Jenks* for the respondents. Defendant had not acquired any right by plaintiffs' acquiescence to manufacture

brick on his premises in any manner so as to injure plaintiffs' premises. (*Crosby* v. *Lightowler*, 36 L. J. Ch., 584; 2 id., 479; *Savile* v. *Kilner*, 26 L. T. R. [N. S.], 277; *Tipping* v. *St. H. S. Co.*, L. R., 1 Ch., 66; *Bay* v. *Ray*, 28 L. T. R. [N. S.], —; 6 Moak's Eng. R., 435; *Parker* v. *Mitchell*, 11 Ad. & El. 188; *Battishill* v. *Reed*, 18 C. B., 696; *Mulville* v. *Fallon*, 6 I. R., Eq. S., 459; *Stilman* v. *White Rock Co.*, 3 W. & M., 549; *Rhodes* v. *Whitehead*, 27 Tex., 304; *Stein* v. *Burden*, 24 Ala., 130; *Evans* v. *Dana*, 7 R. I., 306; *Holsman* v. *B. S. Co.*, 1 McC. [N. J.], 335; 4 Lans., 283; 7 id., 257; *Crosby* v. *Bessey*, 49 Me., 539; *Norton* v. *Valentine*, 14 Vt., 230; *Webster* v. *Flemming*, 2 Humph. [Tenn.], 518; *Plumbleigh* v. *Dawson*, 1 Gil. [Ill.], 544; *Postlethwaite* v. *Paine*, 8 Ind., 104; 7 Cow., 266; 9 id., 279; *Noyes* v. *Morrill*, 108 Mass., 396; 19 Wend., 309; *Bradley's Fish Co.* v. *Dudley*, 37 Conn., 136; 9 Cush., 171; *Richardson* v. *Pond*, 15 Gray [Mass.], 389; *Atwater* v. *Bodfish*, 11 id., 152; *McNab* v. *Adamson*, 6 U. C. R., 100; *Moake* v. *Butler*, 1 Rolle, 83; *Flight* v. *Thompson*, 10 Ad. & El., 590; *Goldsmid* v. *Tun. W. Co.*, L. R., 1 Ch. App., 349; *Sutcliff* v. *Wood*, 8 E. L. and Eq., 217–227; *Clowes* v. *Staf. Pot. Co.*, L. R., 8 Ch. App., 125; *Webb* v. *Bird*, 13 C. B. [N. S.], —; *Carr* v. *Foster*, 3 Q. B., 582; *Parks* v. *Mitchell*, 11 Exch., 788; *Bliss* v. *Hall*, 5 Scott, 500; *Weld* v. *Hornby*, 7 East, 195; *Tapling* v. *Jones*, 11 H. L. Cas., 265; *Baendale* v. *McMurray*, L. R., 2 Ch. App., 790; *Rotheram* v. *Green*, Noy, 67; *Bailey* v. *Appleyard*, 3 Nev. & P., 172; *Wilcome* v. *Upton*, 6 M. & W., 536; *Charity* v. *Riddle*, 14 F. C. [Sc.], 340; *Coke's* Litt., 1136; Wood on Nuis., 732; 5 Metc., 205.) Defendant had no right to use his property to the injury of the plaintiff's premises. (*McKeon* v. *Lee*, 23 How. Pr., 258; 51 N. Y., 300; *Rio De D.* v. *Richards*, 4 Assize Bk., fol. 3, p. 6; *Rex* v. *White*, 1 Burr., 337; 2 C. &. P., 485; *Bamford* v. *Turnley*, 31 L. J. [N. S.], 231; *Cavey* v. *Ledbitter*, id., 29, 290; 13 C. B. [N. S.], 470; *Cook* v. *Forbes*, L. R., 5 Eq. Cas., 166; *Broadbent* v. *Imp. Gas Co.*, 7 De G., M. & G., 436; *Millar* v. *Marshall*, 5 Mur. [S. C.], 28;

*Cooper* v. *N. B. R. R. Co.*, 36 Jur., 169; 2 Macph., 117; *Catlin* v. *Valentine*, 9 Paige, 575; *Brady* v. *Weeks*, 3 Barb., 157; *Fish* v. *Dodge*, 4 Den., 317; *Peck* v. *Elder*, 3 Sandf., 129; *Howard* y. *Lee*, id., 281; *Carhart* v. *Aub. G. L. Co.*, 22 Barb., 297; *Taylor* v. *People*, 6 Park., 352; *Rex* v. *Cross*, 2 C. & P., 226; *Crunden's Case*, 2 Camp., 89; *Sudley's Case*, id., 168; *Lynch's Case*, 6 City Hall Rec., 61; *Davis* v. *Lambertson*, 56 Barb., 580; *St. H. S. Co.* v. *Tipping*, 11 H. L. Cas., 642; *Crump* v. *Lambert*, L. R., 3 Eq. Cas., 409; *Ross* v. *Butler*, 19 N. J. Eq., 294; 1 Al., 137; 13 id., 95; 20 N. J. Ch., 208; *Mulligan* v. *Elias*, 12 Abb. Pr. [N. S.], 259; *Hutchings* v. *Smith*, 63 Barb., 251; *McKeon* v. *Lee*, 51 N. Y., 306; *Trenor* v. *Jackson*, 15 Abb. Pr. [N. S.], 15, 115; 1 Kent's Com. [12th ed.], 448; 2 Bl. Com., 402–403; *Cole* v. *Sprone*, 35 Me., 161; *Norcross* v. *Thomas*, 51 id., 504; *Whitney* v. *Bartholomew*, 21 Conn., 218; *Bishop* v. *Banks*, 33 id., 121; *Duncan* v. *Hays*, 22 N. J. Eq., 27; *Meigs* v. *Lister*, 23 id., 200; *Cleveland* v. *Cit. G. L. Co.*, 20 id., 203; *Grady* v. *Wolsner*, 46 Ala., 381; *Atty.-Gen'l* v. *Blount*, 4 Hawk. N. C. R., 384; *Aldrich* v. *Howard*, 8 R. I., 246; 7 Am. L. Reg. [N. S.], —; 6 Eng. R. [Moak], 440; *Smith* v. *Phillips*, 8 Phila. R., 10, 15; *Galbrath* v. *Oliver*, 3 Pitt, 78; *Catlin* v. *Valentine*, 9 Paige, 575; *Farmers'* of *H. W.*, 12 Mod., 519; *Wier's Appeal*, 74 Penn., 230, 241, 243.) An injunction was properly granted restraining defendant in the continuance of his business. (*Thorpe* v. *Brumfit*, 8 L. J. [Ch.], 650; *Crump* v. *Lambert*, 15 L. T. R. [N. S.], 600; 17 id., 133; *Barwell* v. *Brooks*, 1 L. T., 75; 15 Jur., 418 n.; Yool on W. & Nuis., 115; 4 De G. & S., 327; *Pollock* v. *Lester*, 11 Hare, 266; *Cleeve* v. *Mahony*, 9 W. R., 882; *Beardmore* v. *Tredwell*, 31 L. J. [Ch.] [N. S.], 833; *Bamford* v. *Turnley*, 2 B. & S. [Q. B.], 62–89; *Carey* v. *Ledbitter*, 13 C. B. [N. S.], 470; *W. L. Bd. of H.* v. *Hill*, id., 479; *Luscombe* v. *Steer*, 17 L. T. R. [N. S.], 229; *Roberts* v. *Clark*, 18 id., 49; *Bareham* v. *Hall*, 22 L. T., 116; *White* v. *Jameson*, L. R., 18 Eq. Cas., 303; *Rich* v. *Basterfield*, 4 C. B., 738; *Saxby* v. *Manchester, S. and L. R. Co.*,

L. R., 4 C. P., 198; *Rex* v. *Pedley*, 1 A. & E., 822; *Todd* v. *Flight*, 9 C. B. [N. S.], 377; 30 L. J. [C. P.], 21; *Quarmant* v. *Burnett*, 6 M. & W., 499.)

EARL, J.    The plaintiffs owned about forty acres of land, situate in the village of Castleton, on the east bank of the Hudson river, and had owned it since about 1849.    During the years 1857, 1858 and 1859 they built upon it an expensive dwelling-house, and during those years, and before and since, they improved the land by grading and terracing, building roads and walks through the same, and planting trees and shrubs, both ornamental and useful.

The defendant had for some years owned adjoining lands, which he had used as a brick-yard.    The brick-yard is southerly of plaintiffs' dwelling-house about 1,320 feet, and southerly of their woods about 567 feet.    In burning bricks defendant had made use of anthracite coal.    During the burning of a kiln sulphuric acid gas is generated, which is destructive to some kinds of trees and vines.    The evidence shows, and the referee found, that gas coming from defendant's kilns had, during the years 1869 and 1870, killed the foliage on plaintiff's white and yellow pines and Norway spruce, and had, after repeated attacks, killed and destroyed from 100 to 150 valuable pine and spruce trees, and had injured their grape vines and plum trees, and he estimated plaintiff's damages from the gas during those years at $500.

This gas did not continually escape during the burning of a kiln, but only during the last two days, and was carried into and over plaintiff's land only when the wind was from the south.

It is a general rule that every person may exercise exclusive dominion over his own property, and subject it to such uses as will best subserve his private interests.    Generally, no other person can say how he shall use or what he shall do with his property.    But this general right of property has its exceptions and qualifications.    *Sic utere tuo ut alienum non laedas* is an old maxim which has a broad application.    It

does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life. As Lord Justice JAMES beautifully said, in *Salvin* v. *Northbrancepeth Coal Co.* (9 Law R., Ch. Appeals, 705): "If some picturesque haven opens its arms to invite the commerce of the world, it is not for this court to forbid the embrace, although the fruit of it should be the sights and sounds and smells of a common seaport and ship-building town which would drive the Dryads and their masters from their ancient solitudes."

But every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor. If he make an unreasonable, unwarrantable or unlawful use of it, so as to produce material annoyance, inconvenience, discomfort or hurt to his neighbor, he will be guilty of a nuisance to his neighbor. And the law will hold him responsible for the consequent damage. As to what is a reasonable use of one's own property cannot be defined by any certain general rules, but must depend upon the circumstances of each case. A use of property in one locality and under some circumstances may be lawful and reasonable, which, under other circumstances, would be unlawful, unreasonable and a nuisance. To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient.

Within the rules thus referred to, that defendant's brick burning was a nuisance to plaintiffs cannot be doubted. Numerous cases might be cited, but it will be sufficient to cite, mainly, those where the precise question was involved in reference to brick burning.

The earliest case is that of the *Duke of Grafton* v. *Hil-*

*liard et al.*, decided in 1736, not reported, but referred to in *Attorney-General* v. *Cleaver* (18 Vesey, 210). Chancellor ELDON there says that the court held in that case that "the manufacture of bricks, though near the habitations of men, if carried on for the purpose of making habitations for them, is not a public nuisance." By looking at that case, as found in a note to *Walter* v. *Selfe* (4 Eng. Law and Eq., 18), it will be seen that no such decision was made in that case, and that no such language was used therein. A temporary injunction had been granted in the first instance, restraining brick burning, but it was dissolved upon the defendant's showing that it would really produce no annoyance or injury to the plaintiff. In *Donald* v. *Humphrey* (14 F. [Sc.], 1206), the plaintiff brought an action to restrain brick burning, and insisted that the business was *per se* a nuisance and should be restrained without proof of actual injury, but the court held that the business of burning brick was a lawful business and not *per se* a nuisance, but that the question as to whether it was a nuisance or not was one of fact to be determined by the circumstances of each case, and refused an injunction without proof that the business was so conducted as to be a nuisance to the plaintiff.

In the case of *Walter* v. *Selfe* (*supra*), the defendants were enjoined from burning bricks in the vicinity of the plaintiffs' premises so as to occasion damage or annoyance to the plaintiffs or injury or damage to the buildings thereon standing or shrubberies or plantation named in the bill. In *Pollock* v. *Lester* (11 Hare, 266), the defendant was making preparations to burn bricks near a lunatic asylum of which plaintiff was proprietor, and plaintiff brought his bill praying an injunction to restrain the defendant, alleging in his bill that the smoke and vapor arising from the brick burning would be injurious to his patients and cause them to leave his asylum, and would also injure the trees, shrubs and plants thereon growing, and the injunction was granted. This was done, it will be seen, merely upon the apprehension of damage and before any was actually suffered. After the decision of this

case *Hole* v. *Barlow* (4 C. B. [N. S.], 336), was decided. That was an action for a nuisance arising from the burning of bricks on defendant's own land near to the plaintiff's dwelling-house, and the judge at the trial told the jury that no action lies for the reasonable use of a lawful trade in a convenient and proper place, even though some one may suffer inconvenience from its being carried on, and he left two questions to the jury, first, "was the place in which the bricks were burned a proper and convenient place for the purpose;" secondly, if they thought the place was not a proper place for the purpose then "was the nuisance such as to make the enjoyment of life and property uncomfortable." It was held that there was no misdirection. That case, which was in conflict with prior authorities, has since been overruled in *Beadmore* v. *Treadwell* (31 Law Jour. [N. S.], 873); *Bamford* v. *Turnley* (31 Law Jour. [N. S., Q. B.], 286); *Cavey* v. *Ledbitter* (13 C. B. [N. S.], 470); *Banham* v. *Hall* (22 Law Times [N. S.], 116); *Roberts* v. *Clark* (18 id., 49); *Luscombe* v. *Steer* (17 id., 229). In *Beadmore* v. *Treadwell* the court granted an injunction restraining the burning of bricks within 650 yards of the plaintiff's dwelling, holding that the burning of bricks within 350 yards of the plaintiff's residence was a nuisance, although the bricks were to be used in the erection of government fortifications. Vice-Chancellor Stuart says : " Upon the facts of the present case, notwithstanding the contradictory evidence, my mind is satisfied that there has been an actual and positive injury to the plaintiff; that the comfort and enjoyment of his mansion house are injured; that the trees planted and standing and growing for ornament have been, in some cases, entirely destroyed, and in many cases injured."

In *Bamford* v. *Turnley*, Cockburn, J., before whom the case was tried, followed *Hole* v. *Barlow*, and charged the jury that if they thought the spot was convenient and proper, and that the use by the defendant of his premises was, under the circumstances, a reasonable use of his own land, he would be entitled to a verdict. The jury found for the defendant,

but upon the hearing in the Exchequer Chamber it was held that the instructions were erroneous, and that it was no answer in an action for a nuisance creating actual annoyance and discomfort in the enjoyment of neighboring property that the injury resulted from a reasonable use of the property, and that the act was done in a convenient place, nor that the same business had been carried on in the same locality for seventeen years. The doctrine of *Hole* v. *Barlow* was distinctly repudiated, and that case was in terms overruled.

In *Cavey* v. *Ledbitter*, an action for a nuisance caused by brick burning, the judge at the trial left it to the jury, in substance, to say whether the acts of the defendant rendered the plaintiff's residence substantially uncomfortable, and whether his shrubs and fruit trees had been thereby injured; and he refused to ask them whether the bricks had been burned in a convenient place, and it was held that there was no misdirection.

In *Banham* v. *Hall*, a bill was filed for an injunction to restrain the defendant from using a brick-kiln in such a way as to be a nuisance to the property of plaintiff, or to plaintiff and his family. There, as here, the damage and annoyance were suffered only when the wind blew from the direction of the kiln, and V. C. STEWART said " that, *prima facie*, a brick-kiln built within 100 yards in front of a mansion-house would be a nuisance, unless the process used for burning the bricks was one of an unusual kind."

*Roberts* v. *Clark* was a bill for an injunction restraining the defendant from burning brick on his premises to the injury of plaintiff's premises, and the vice-chancellor held that brick burning carried on in the ordinary way was a nuisance to persons living within the limits affected by it, and that 240 yards was no extreme limit for the smoke and vapor to extend, and that it was such a nuisance as the court would restrain.

In *Luscomb* v. *Steers*, the defendant rented premises and began to burn brick within 1,442 feet of the plaintiff's house on premises adjoining. At the time when the bill was brought

no actual injury had been sustained by the plaintiff, but the bill was predicated upon a prospective nuisance. The court denied an injunction upon the grounds that no actual injury having been sustained no nuisance existed; and that no evidence having been given to establish the fact of prospective nuisance, it was not a case for equitable relief. But the court said: "If the business should hereafter become a nuisance to the plaintiff, he can then apply to the court for relief and his rights will be protected."

In this country, so far as I can ascertain, the question of nuisance from brick burning has rarely been before the courts. The only case to which our attention has been called is *Huck-einstine's Appeal* (70 Penn., 102). In that case AGNEW, J., says: "Brick making is a useful and necessary employment and must be pursued near to towns and cities where bricks are chiefly used. Brick burning, an essential part of the business, is not a nuisance *per se.* (*Atty.-Gen.* v. *Cleaver*, 18 Ves., 219.) It, as many useful employments do, may produce some discomfort and even some injury to those near by, but it does not follow that a chancellor would enjoin therefore." He then goes on to say that the aid of an injunction is not matter of right, but of grace, and concludes that there were so many similar nuisances in the locality that it was not clear that this nuisance increased the discomfort from them, and that it was doubtful whether the plaintiff had suffered any material damage from the acts, and therefore held that an injunction ought not to issue and that the plaintiff should be left to his remedy at law. In the following analogous cases useful industries which produced smoke or noxious gases or vapors or odors, were declared nuisances: *Catlin* v. *Valentine* (9 Paige, 575); *Peck* v. *Elder* (3 Sandf. Sup. Ct., 129); *Taylor* v. *The People* (6 Parker Cr., 352); *Davis* v. *Lamberson* (56 Barb., 480); *Hutchins* v. *Smith* (63 id., 251); *Whitney* v. *Bartholomew* (21 Conn., 213); *Cooper* v. *Randall* (53 Ill., 524); *Rex* v. *White* (1 Burr., 337); *Cook* v. *Forbes* (L. R., 5 Eq. Cas., 166); *Sampson* v. *Smith* (8 Sim., 272); *Tipping* v. *St. Helen Smelting Co.* (4 B. & L., 505);

*Crump* v. *Lambert* (L. R., 3 Eq. Cas., 409); *Pointer* v. *Gill* (2 Rolls' Ab., 140). Without further citation of authority I think it may safely be said that no definition of nuisance can be found in any text book or reported decision which will not embrace this case.

But the claim is made that although the brick burning in this case is a nuisance, a court of equity will not and ought not to restrain it, and the plaintiffs should be left to their remedy at law to recover damages, and this claim must now be examined.

Prior to Lord ELDON's time, injunctions were rarely issued by courts of equity. During the many years he sat upon the woolsack this remedy was resorted to with increasing frequency, and with the development of equity jurisprudence, which has taken place since his time, it is well said that the writ of injunction has become the right arm of the court. It was formerly rarely issued in the case of a nuisance until plaintiff's right had been established at law, and the doctrine which seems now to prevail in Pennsylvania, that this writ is not matter of right, but of grace, to a large extent prevailed. But now a suit at law is no longer a necessary preliminary, and the right to an injunction, in a proper case, in England and most of the States, is just as fixed and certain as the right to any other provisional remedy. The writ can rightfully be demanded to prevent irreparable injury, interminable litigation and a multiplicity of suits, and its refusal in a proper case would be error to be corrected by an appellate tribunal. It is matter of grace in no sense except that it rests in the sound discretion of the court, and that discretion is not an arbitrary one. If improperly exercised in any case either in granting or refusing it, the error is one to be corrected upon appeal. (*Corning* v. *Troy Iron and Nail Factory*, 40 N. Y., 191; *Reid* v. *Gifford*, Hopkins' Ch., 416; *Pollitt* v. *Long*, 58 Barb., 20; *Mohawk and Hudson R. R. Co.*, v. *Artcher*, 6 Paige, 83; *Parker* v. *Winnipiseogee Lake Cotton and Woolen Co.*, 2 Black [U. S.], 545, 551; *Webber* v. *Gage*, 37 N. H., 182; *Dent* v. *Auction Mart Association*,

35 L. J. [Ch.], 555; *Attorney-General* v. *United Kingdom Tel. Co.*, 30 Beav., 287; *Wood* v. *Sutcliffe*, 2 Sim. [N. S.], 165; *Clowes* v. *Staffordshire Potteries Co.*, L. R., 8 Ch. App., 125.) Here the remedy at law was not adequate. The mischief was substantial and, within the principle laid down in the cases above cited and others to which our attention has been called, irreparable.

The plaintiffs had built a costly mansion and had laid out their grounds and planted them with ornamental and useful trees and vines, for their comfort and enjoyment. How can one be compensated in damages for the destruction of his ornamental trees, and the flowers and vines which surrounded his home ? How can a jury estimate their value in dollars and cents ? The fact that trees and vines are for ornament or luxury entitles them no less to the protection of the law. Every one has the right to surround himself with articles of luxury, and he will be no less protected than one who provides himself only with articles of necessity. The law will protect a flower or a vine as well as an oak. (*Cook* v. *Forbes*, L. R., 5 Eq. Ca., 166; *Broadbent* v. *Imperial Gas Co.*, 7 DeG., McN. & G., 436.) These damages are irreparable too, because the trees and vines cannot be replaced, and the law will not compel a person to take money rather than the objects of beauty and utility which he places around his dwelling to gratify his taste or to promote his comfort and his health.

Here the injunction also prevents a multiplicity of suits. The injury is a recurring one, and every time the poisonous breath from defendant's brick-kiln sweeps over plaintiffs' land they have a cause of action. Unless the nuisance be restrained the litigation would be interminable. The policy of the law favors, and the peace and good order of society are best promoted by the termination of such litigations by a single suit.

The fact that this nuisance is not continual, and that the injury is only occasional, furnishes no answer to the claim for an injunction. The nuisance has occurred often enough within two years to do the plaintiffs large damage. Every

time a kiln is burned some injury may be expected, unless the wind should blow the poisonous gas away from plaintiffs' lands. Nuisances causing damage less frequently have been restrained. (*Ross* v. *Butler*, 19 N. J., 294; *Meigs* v. *Lister*, 23 N. J. Eq. R., 200; *Clowes* v. *North Staffordshire Potteries Co., supra; Mulligan* v. *Eliot*, 12 Abb. Pr. R. [N. S.], 259.)

It matters not that the brick-yard was used before plaintiffs bought their lands or built their houses. (*Taylor* v. *The People, supra; Wier's Appeal*, 74 Penn., 230; *Brady* v. *Weeks*, 3 Barb., 156; *Barnwell* v. *Brooks*, 1 Law Times [N. S.], 454.) One cannot erect a nuisance upon his land adjoining vacant lands owned by another and thus measurably control the uses to which his neighbor's land may in the future be subjected. He may make a reasonable and lawful use of his land and thus cause his neighbor some inconvenience, and probably some damage which the law would regard as *damnum absque injuria*. But he cannot place upon his land any thing which the law would pronounce a nuisance, and thus compel his neighbor to leave his land vacant, or to use it in such way only as the neighboring nuisance will allow.

It is claimed that the plaintiffs so far acquiesced in this nuisance as to bar them from any equitable relief. I do not perceive how any acquiescence short of twenty years can bar one from complaining of a nuisance, unless his conduct has been such as to estop him. There is no proof that plaintiffs, when they bought their lands, knew that any one intended to burn any bricks upon the land now owned by defendant. From about 1840 to 1853 no bricks were burned there. Then from 1853 to 1857 bricks were burned there, and then not again until 1867. From 1857 to 1867 the brick yard was plowed and used for agricultural purposes. Before suit brought, plaintiffs objected to the brick burning. No act or omission of theirs induced the defendant to incur large expenses or to take any action which could be the basis of an estoppel against them, and therefore there was no acquiescence or laches which should bar the plaintiffs, within any rule laid down in any reported case.

Opinion of the Court, per Earl, J.

It is true that if a party sleeps on his rights and allows a nuisance to go on without remonstrance or without taking measures either by suit at law or in equity to protect his rights, and allows one to go on making large expenditures about the business which constitutes the nuisance, he will sometimes be regarded as guilty of such laches as to deprive him of equitable relief. But this is not such a case. (*Radenhurst* v. *Coate*, 6 Grant's Ch. [Ont.], 140; *Heenan* v. *Dewar*, 18 id., 438; *Bankart* v. *Houghton*, 27 Beav., 425.)

The defendant claims a prescriptive right to burn bricks upon his land and to cause the poisonous vapors to flow over plaintiffs' lands. Assuming that defendant could acquire by lapse of time and continuous user the prescriptive right which he claims, there has not here been a continuous use and exercise of the right for twenty consecutive years. Anthracite coal was first used for burning bricks in this yard in 1834, and after six years brick burning was discontinued. It was not resumed aga'n until about 1853, and after four years it was again discontinued, and it was not resumed again until 1867. So that anthracite coal, which caused plaintiffs' damage, had not been used in all for twenty years and certainly not continuously in burning bricks upon the yard now owned by defendant. If he could acquire the right claimed by prescription, he, and those under whom he holds, must for twenty years have caused the poisonous gases to flow over plaintiffs' land whenever they burned bricks and the wind blew from the direction of the kiln. Such a prescription neither the allegations in the answer nor the proofs upon the trial, nor the findings of the referee, warrant. The referee finds that the premises of defendant have been known and used as a brick-yard for over twenty-five years. This is not a finding that they have been used as a brick-yard for twenty-five years continuously, or that they have caused the poisonous gases to flow over plaintiffs' land for that length of time continuously. (*Ball* v. *Ray*, L. R., 8 Ch. App., 467; *Parker* v. *Mitchell*, 11 Ad. & El., 788; *Battishill* v. *Reed*, 18 C. B., 696; *Bradley Fish Co.* v. *Dudley*, 37 Conn., 136.)

Where the damage to one complaining of a nuisance is small or trifling, and the damage to the one causing the nuisance will be large in case he be restrained, the courts will sometimes deny an injunction. But such is not this case; here the damage to the plaintiffs, as found by the referee, is large and substantial. It does not appear how much damage the defendant will suffer from the restraint of the injunction. He does not own the only piece of ground where bricks can be made. We know that material for brick making exists in all parts of our State, and particularly at various points along the Hudson river. An injunction need not therefore destroy defendant's business or interfere materially with the useful and necessary trade of brick making. It does not appear how valuable defendant's land is for a brick-yard, nor how expensive are his erections for brick making. I think we may infer that they are not expensive. For aught that appears, his land may be put to other use just as profitable to him. It does not appear that defendant's damage from an abatement of the nuisance will be as great as plaintiffs' damages from its continuance. Hence this is not a case within any authority to which our attention has been called, where an injunction should be denied on account of the serious consequences to the defendant.

We cannot apprehend that our decision in this case can improperly embarrass those engaged in the useful trade of brick making. Similar decisions in England, where population and human habitations are more dense, do not appear to have produced any embarrassment. In this country there can be no trouble to find places where brick can be made without damage to persons living in the vicinity. It certainly cannot be necessary to make them in the heart of a village or in the midst of a thickly settled community.

Defendant complains that the damage allowed by the referee was too great. He had the evidence and all the circumstances before him, and we cannot review his decision upon the amount of damage.

It is also complained that the injunction contained in the

judgment as entered is broader and more unlimited than that ordered by the referee. This is a matter not to be corrected upon appeal. Defendant should have compelled an entry of judgment in accordance with the decision of the referee. If plaintiffs entered a judgment not authorized by the referee's report, defendant should have moved to set it aside or to correct it.

One of the three judges who heard the appeal in the General Term of the Supreme Court died before the decision was made, and the appeal was decided by the remaining two judges, and this appeal is from the judgment entered upon that decision. It is now objected that the two judges could not make a decision. Even if the defendant, after he has appealed from the judgment, can raise the objection, we are of opinion that the objection is not well founded, and that two judges can hold a General Term and decide cases argued there. ( *Van Rensselaer* v. *Witbeck*, 2 Lans., 499.)

It follows from these views that the judgment should be affirmed.

All concur.

Judgment affirmed.