ADAM RIEDEMAN, Respondent, *v.* THE MOUNT MORRIS ELECTRIC LIGHT COMPANY, Appellant.*

*Equity — when the maintenance of an electric power plant, alleged to constitute a nuisance, will not be enjoined.*

An injunction will not be granted where it would create serious injury to an individual or to the community at large, and a relatively slight benefit to the party seeking it.

In an action to enjoin an electric light company, engaged in supplying electricity for lighting the public streets and private places and for motive power, from operating its machinery so as to discharge, as alleged, quantities of soot, cinders, etc., upon the plaintiff's premises, which were adjacent to its plant, and to

*See page 9.

cause noise and vibration affecting the beneficial enjoyment of the plaintiff's property, it appeared that the neighborhood in which the property was located was devoted almost exclusively to manufacturing and warehouse purposes, with a few stables and a few old-fashioned dwellings turned into tenement houses; that the defendant's machinery was of the best known kind and created no noise or vibration which was not essential to its operation, and that the greatest care was used to prevent soot, cinders, etc., from escaping from the chimney to the adjoining premises ; that the plaintiff's damages consisted solely of his alleged loss of rents, and that he had previously obtained from an elevated railroad company whose railroad was operated in front of his premises a substantial sum in payment for the injury resulting to his property from its maintenance and operation.

*Held,* that, considering the locality and the nature of the business there transacted, the case was not one in which equity should enjoin the defendant's use of its property, and that the plaintiff should be left to his remedy at law.

APPEAL by the defendant, The Mount Morris Electric Light Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of June, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*Henry J. Hemmens,* for the appellant.

*Charles H. Wenzell,* for the respondent.

INGRAHAM, J.:

The plaintiff alleges that he is the owner of the property known as No. 534 Greenwich street, in the city of New York; that the defendant is in possession of certain lands lying adjacent to the plaintiff's premises, and that the defendant has placed upon the premises occupied by it certain machinery for the purpose of generating electricity to be supplied to the general public for lighting and other purposes, and has so negligently constructed and operated the said machinery as to discharge upon the premises of the plaintiff great quantities of soot, cinders, ashes and noisome gases, unpleasant odors, excessive heat, steam and the water condensing from steam, and makes and produces in the operation of its machinery loud, disagreeable and incessant noises and great jar and vibration, which are transmitted into and through the property of the plaintiff, thereby causing a great nuisance and disturbing the rest and quiet of the inmates of the plaintiff's property and injuriously affecting their health and their quiet and peaceable enjoyment and use

of the premises; and asks for judgment enjoining the defendant from committing and continuing said nuisance and to recover the sum of $2,500 damages.

The court found that the operation of the defendant's machinery causes great vibration, which is transmitted through the earth to the plaintiff's premises, causing physical disturbance thereof, together with loud, disagreeable and annoying sounds; that the defendant also causes and suffers large quantities of dry and moist soot and cinders to issue from the chimney or smokestack and that the same enters the plaintiff's dwelling house; that the plaintiff, by reason of such vibrations, smoke, soot and cinders, has sustained damage in the sum of $794.46; " that defendant is financially responsible, and serious inconvenience would result to the public and to its private patrons and great loss and damage would be sustained by defendant if the operation of its said plant should be perpetually enjoined, and also if the operation of said plant in such a manner as to constitute a nuisance to plaintiff should be forthwith enjoined without affording it an opportunity to abate the nuisance if possible, otherwise than by stopping the operation of its said plant." The court, therefore, directs judgment for an injunction perpetually enjoining the defendant from so operating its machinery as to cause or produce a jarring, shaking or vibration of the plaintiff's dwelling house of such a character as to occasion material or substantial physical discomfort, disturbance or annoyance to the tenants or occupants thereof, or so as to constitute a nuisance, or so as to materially depreciate the value of the said building for use or occupation as a dwelling or tenement, or so as to seriously interfere with the plaintiff's use or enjoyment of his said premises; also perpetually enjoining and restraining the defendant from so operating or running its said electric lighting plant during the night time as to cause or create any loud, excessive, disagreeable, annoying or injurious sounds; and also enjoins the defendant from so running or operating its said machinery so as to discharge or force into the public sewer such an excessive volume or quantity of steam as to cause heat, stench and offensive odors to come up through the closet in the plaintiff's dwelling house, or so as to allow or permit undue or unnecessary or unreasonable quantities of smoke, soot or cinders, moist or dry, to

issue from its said plant or works, in such quantities as to seriously or materially interfere with the comfortable use and enjoyment of the tenants or occupants of plaintiff's premises. Such injunction is not to become operative and take effect until the 15th day of September, 1900, and there is a provision granting leave to apply to the court to postpone the period at which such injunction is to become effective, and awarding the plaintiff a money damage for the injury sustained by him from the 6th day of October, 1889, to the date of the trial, and judgment was entered in accordance with this decision.

The premises occupied by the defendant are on the southeast corner of Greenwich street and Vandam street, with a frontage of seventy-five feet on Greenwich street. There was located in the building upon these premises the machinery necessary for the generation of electricity used for the purpose of electric lighting and power. The plaintiff's premises were on the west side of Greenwich street from sixty to eighty feet north of the defendant's premises. There was evidence tending to show that a constant vibration was caused to the plaintiff's premises, which was just perceptible. There was also a perceptible noise from the defendant's power house which could be heard about a block away. This noise was caused by the rush of the belts connecting the defendant's machinery with the engine. In front of the plaintiff's premises on Greenwich street there was erected and in operation an elevated railroad, which caused noise and vibration to the plaintiff's building when the trains passed; and this railroad runs constantly day and night. There was also evidence that steam and soot came from the chimney of the defendant's power house; but there is no evidence that such steam or soot went into or upon the plaintiff's property. On the contrary, witnesses who were called by the plaintiff testified to the effect that such smoke and soot did not come from defendant's property into the apartments of the plaintiff; that on a clear day it could not be noticed, but only on a dark day, when the steam or smoke came down to the street. It did appear that there was dust and cinders from the elevated trains as they passed. This evidence as to the vibration to the plaintiff's property was contradicted by witnesses called by the defendant. They testified that the vibration upon the plaintiff's premises was plainly visible when the trains on the elevated passed, but that there was no vibration otherwise. It

was further proved that the neighborhood in which these premises are located was devoted almost exclusively to manufacturing and warehouse purposes, with a few stables and a few old-fashioned dwellings turned into tenement houses, and that this change to business and manufacturing purposes has come within the past ten years. Various kinds of manufacturing concerns are located in the neighborhood — manufacturers of candy, beer bottlers, pickle manufacturers, storage warehouses and stables. It was also proved that the plaintiff's machinery for the generation of electricity was of the best known kind; that no noise or vibration was made that was not essential; and that the greatest care was used to prevent steam, cinders or soot from escaping from the chimney to the adjoining premises.

The proof that the operation of the defendant's machinery caused substantial damages was not satisfactory. The plaintiff's sole claim to damages rests upon his proof of loss of rents, which he now claims was caused by the operation of the defendant's business, while it appears in evidence that an elevated railroad exists in front of the plaintiff's property and that he made a claim against the railroad company for injuries sustained by the maintenance and operation of its road, and obtained a substantial sum of money upon the settlement of that claim. In view of that fact it certainly cannot be said that the loss of rents was solely occasioned by the use to which the defendant had put its property, and this, especially, in view of the fact that the evidence is uncontradicted that during the past ten years this neighborhood has changed from that of a residential neighborhood to one devoted almost exclusively to manufacturing and business purposes. Considering the locality and the nature of the business there transacted, it seems to me that this was not a case in which equity should enjoin the defendant's use of the property, and that the plaintiff should be left to his remedy at law.

It is not claimed that the plaintiff has any easement or interest in the property now occupied by the defendant. There is no contractual relation or covenant limiting the use to which the defendant can apply its property. The sole right of the plaintiff to maintain this action is upon the ground that the defendant is maintaining a nuisance to the injury of the plaintiff. Existing modern conditions require the use of steam or other power in conducting the affairs

and transacting the business of large cities. In the natural order of things certain portions of the city are devoted to manufacturing purposes where machinery is used. For courts of equity to enjoin the use of machinery in such portions of the city on the complaint of a property owner who has not seen fit to use his property as the other property in the locality or neighborhood is used, would result in banishing from the city the establishments which are essential to its welfare, the comfort of its inhabitants and the transaction of its business. In exercising its jurisdiction, a court of equity always considers the equities presented in the particular case in which it is asked to interfere; and it is the rule that, where an injunction would cause serious injury to an individual or the community at large, and a relatively slight benefit to the party asking its interposition, injunctive relief will be denied and the parties left to their remedy at law. Even in a case where the defendant had violated a covenant in relation to the use of his premises, courts of equity have refused to enforce it when subsequent events have made performance on the part of the defendant so onerous that it would impose great hardship upon him and be of little or no benefit to the plaintiff. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 317.) In that action it was conceded that the plaintiffs had established by their proof a violation of a covenant by the defendant and a clear legal cause of action, but the court refused to grant equitable relief upon the ground that it would be inequitable to enforce the covenant by injunction. So it has been held that it is the general rule that a court of equity is not bound to issue an injunction when it will produce great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right. (*Gray* v. *Manhattan R. Co.*, 128 N. Y. 509.) The case at bar comes within this principle. That plaintiff's property is suffering substantial damage in consequence of any use to which the defendant is putting its property, is, under the evidence, quite doubtful. The neighborhood, as before stated, is almost exclusively devoted to manufacturing and business purposes, the only property used for residential purposes being old residences, changed so as to allow them to be used as tenement houses. The defendant is maintaining an electric light plant which supplies electricity for lighting the public streets and private places and for motive power. The use to which the defend-

ant is applying its property is thus of a *quasi* public character. No negligence is shown in the use of the appliances employed. To enjoin such use by the defendant would be to compel it at great cost to remove this property and business to some other locality. The furnishing of electricity for lighting and power is recognized as essential for the public welfare and convenience, and if the defendant is enjoined by the court, it does not appear that there is any other situation in the city to which its plant could be removed. If a property owner can obtain an injunction restraining persons from using machinery upon property in a locality like that described in this action, all business requiring the use of such machinery would be banished from the city of New York, the generation of electricity prevented, most of the street cars stopped and the streets of the city left unlighted. Ordinarily, machinery cannot be operated without some vibration and noise, and it is because the defendant's use of the property occasions vibrations and noise that the court has issued this injunction. The plaintiff's sole cause of action rests upon the allegation that the defendant is maintaining a nuisance. To recover for any injury sustained by that nuisance the plaintiff has a remedy at law. The injury that the defendant and the public will sustain by this injunction will be serious, and there is a doubt as to whether the plaintiff has sustained substantial damage in consequence of the use made by the defendant of its property. I think that, under such circumstances, a court of equity should refuse to grant an injunction and leave the plaintiff to his remedy at law.

For this reason the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Van Brunt, P. J., O'Brien, McLaughlin and Hatch, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.