(48 Misc. Rep. 457.)

### BENTLEY v. EMPIRE PORTLAND CEMENT CO.

(Supreme Court, Special Term. Onondaga County. November, 1905.)

NUISANCE—INJUNCTION—INJURY TO PROPERTY.

A cement plant had been located in a sparsely settled community at an expense of $650,000, and was using the most approved apparatus. Whenever the wind was in a certain direction, smoke and ashes were carried to plaintiff's premises, about 1,000 feet away, covering everything within and without the house with a heavy dust, in consequence of which the rental value of the property was decreased. *Held*, that where the evidence showed that the occasional injury to plaintiff depended upon the direction of the wind, and did not decrease the rental value of the property more than $25 per year, a permanent injunction compelling defendant to close its works would not be granted.

Action by Susan A. Bentley against the Empire Portland Cement Company. Dismissed.

Welch & Parsons, for plaintiff.
King, Waters & Page, for defendant.

ANDREWS, J. Warners is a settlement of 400 or 500 people, 70 or 80 of whom are employed in the cement works. Most of the rest are employed in brick works. Cement has been made upon what is now the defendant's property since 1886 or 1887. Dome kilns were originally used to dry and burn the product; but the plant was destroyed by fire, and, some two years ago, when rebuilt, five rotary furnaces were substituted for the kilns. These furnaces are each some 60 feet long. After they are sufficiently heated soft coal dust is forced, by a low air pressure, into one end and the liquid cement into the other. The coal dust burns almost like a gas, and by the intense heat produced the cement is dried and baked. At its back end the rotary is connected with a dust chamber, and from this chamber a stack rises. The draft from the furnace carries into the dust chamber such ashes as there may be from the coal, and more or less of the cement. It is supposed to settle here, so that a comparatively small part of the refuse is carried up the stack. Enough dust collects in each of these chambers to fill four or five wheel-

barrows a day. The defendant has built up a large business, and·has invested in its plant substantially its whole capital of $650,000. The plaintiff has owned and occupied, since 1884, an acre of land situated 1,070 feet to the northeast of the defendant. On this land is a two-story frame house, some barns, and a shed. The whole property is worth about $2,200.

Notwithstanding the dust chambers used by the defendant, the stacks of its rotaries throw out considerable quantities of dust and ashes, as well as smoke. Whenever the wind is in the right direction, clouds of this smoke, dust, and ashes are carried over and upon the plaintiff's premises. Whenever this happens, a heavy deposit of dust is left, both within and without the house, covering food, clothing, and furniture, and causing discomfort and annoyance to the occupants of the premises. This condition of affairs has continued for two years, and the result has been to decrease the rental value of the premises about $25 a year. In view of these facts, the plaintiff has begun this action, asking that the defendant be enjoined from operating its works, to her injury, and from depositing dust upon her premises. There can be no doubt that it is unlawful for one person to so use his property as to create a nuisance inflicting material damage to another. It is no defense that the person creating the nuisance employs many men, or uses a great capital, or that his business is a public benefit compared with which the damage to the other is comparatively slight. More important than all these considerations is the enforcement of the rule that one may not infringe the property rights of another. It is true that courts of equity sometimes, though rarely, have refused to grant an injunction; but this is not upon the theory that the party injured has no right to redress, but, rather, that under the circumstances of that particular case it is better to leave him to his remedy at law.

The first question to be decided, therefore, is whether, under the circumstances of this case, the manner of the operation by the defendant of its works constitutes a nuisance, causing damage to the plaintiff for which she has a remedy. The general principle governing the uses which one may make of his property has been often stated. In Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567, Judge Earl says:

"It is a general rule that every person may exercise exclusive dominion over his own property, and subject it to such uses as will best subserve his private interests. Generally no other person can say how he shall use or what he shall do with his property. But this general right of property has its exceptions and qualifications. 'Sic utere tuo ut alienum non lædas' is an old maxim which has a broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. Persons living in organized communities must suffer some damage, annoyance, and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he must expect to suffer the dirt, smoke, noisome odors, noise, and confusion incident to city life, * * * But every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor. If he makes an unreasonable, unwarrantable, or unlawful use of it, so as to produce material annoyance, inconvenience, discomfort, or hurt to his neighbor, he will be guilty of a nuisance to his neighbor. And the law will hold him responsible for the consequent damage. As to what is a reasonable use of

one's own property cannot be defined by any certain general rules, but must depend upon the circumstances of each case. A use of property in one locality and under some circumstances may be lawful and reasonable, which, under other circumstances, would be unlawful, unreasonable, and a nuisance. To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient."

In Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701, the court says that the principle is recognized:

"That each member of society must submit to annoyances consequent upon the ordinary and common use of property, provided such use is reasonable both as respects the owner of the property, and those immediately affected by the use, in view of time, place, and other circumstances. It is in many cases difficult to draw the line, and to determine whether a particular use is consistent with the duties and burdens arising from vicinage, or whether it inflicts an injury for which the law affords a remedy."

In Bohan v. P. J. G. L. Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711, the court says:

"If one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages, and it is not necessary to a right of action that the owner should be driven from his dwelling. It is enough that the enjoyment of life and property be rendered uncomfortable. * * * While every person has exclusive dominion over his own property * * * he is bound to have respect and regard for his neighbor's rights. * * * He must make a reasonable use of his property, and a reasonable use can never be construed to include those uses which produce destructive vapors and noxious smells, and that result in material injury to the property and to the comfort of the existence of those who dwell in the neighborhood. * * * No authority can be produced holding that negligence is essential to establish a cause of action for injuries of such a character. * * * The wants of mankind demand that property be put to many and various uses and employments, and one may have, upon his property, any kind of lawful business, and so long as it is not a nuisance, and is not managed so as to become such, he is not responsible for any damage that his neighbor accidentally and unavoidably sustains. * * * But where the damage is the necessary consequence of just what the defendant is doing, or is incident to the business itself, or the manner in which it is conducted, the law of negligence has no application, and the law of nuisance applies."

In Booth v. R., W. & O. T. R. R. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552, it appeared that the defendant, for the purpose of constructing its roadway, was temporarily blasting rock upon its land. There was no physical trespass upon the plaintiff's property, but the walls of his house were injured by concussion. Judge Andrews says, as regards the maxim "Sic utere tuo ut alienum non lædas," that the real meaning of the rule is that one may not use his own property to the injury of any legal right of another. There are many cases where the lawful use of one's property causes injury to adjacent property, for which there is no remedy, because no right of the adjacent owner is invaded. "But whether a particular act done upon, or a particular use of, one's own premises constitutes a violation of the obligations of vicinage, would seem to depend upon the question whether such act or use was a reasonable exercise of the right of property, having regard to time, place, and circumstances. It is not everything in the nature of a nuisance which is prohibited. There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort, or injury to his neighbor, which are damnum absque

injuria. The case of the building caused to fall by an excavation in an adjoining lot * * * is an illustration. * * * Whether a particular act or thing constitutes a nuisance may depend on the circumstances and surroundings. The use of premises for mechanical or other purposes, causing great noise, disturbing the peace and quiet of those living in the vicinity, and rendering life uncomfortable, or filling the air with noxious vapors, or causing vibration of the neighboring dwellings, constitute nuisances, and such use is not justified by the right of property. * * * But there is a manifest distinction between acts and uses which are permanent and continuous and temporary acts which are resorted to in the course of adapting premises to some lawful use. * * * The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard of all interests affected, his own and those of his neighbors, and having in view also public policy?"

The rule has never been better stated than in Galbraith v. Oliver (Pa.) 3 Pittsb. R. 79. In speaking of manufacturing establishments the court says:

"They may not be agreeable to his neighbor. The manufacturer is not bound to consult the taste, pleasures, or preferences of others; but he is bound to respect his neighbors' rights. The inflexible rule, 'Sic utere tuo ut alienum non lædas,' stares him in the face. True something must be conceded to the manufacturer. His business is legitimate. The public have an interest in his productions. The adjacent palace owner must forego his personal predilections for more fashionable neighbors, or agreeable occupations in his vicinage. Things merely disagreeable must be borne; but none of his elementary rights must be invaded. However offensive to his sight or taste the pigsty or bone-boiling may be, it is damnum absque injuria. He is remediless. He must avoid looking that way. But whenever his enjoyment to the right of good health, pure air, and water, and to exemption from unreasonable noises at unreasonable hours is interrupted, then the law will hear and heed the complaint. While mills and manufactories are legal and necessary, it is neither legal nor necessary that they be so located as to interfere with the rights of others in the enjoyment of their possessions. When, therefore, they create noises that prevent sleep, or taint the atmosphere with vapor, prejudicial to health or nauseous to the smell, or fill it with a smudge that depreciates its use for every purpose, they trench on the rights of persons affected thereby. Just here is where the line must be drawn. At this point they become nuisances. The difficulty exists in the location of this line. When once ascertained, no lawyer doubts as to the rights and remedies of the parties. Both private and public interests may suffer. Such are the necessities of our social organization. The rights of private property must be protected."

In view of these authorities, and many others which need not be quoted, there can be little doubt but that the works of the defendant, operated as they now are, constitute a nuisance. They infringe upon the rights of plaintiff. There is a physical interference with her property. They cast upon it considerable quantities of dust and cinders. They materially interfere with her enjoyment of it and with her physical comfort. They lower its rental value. All these are things which the defendant has no right to do. It does not necessarily follow, however, that the court should grant an injunction at the prayer of the

plaintiff. In this case, as has been said, the defendant does a large business. It has invested some $650,000 in its plant, and it employs some 70 or 80 men. Apparently it is using the most improved apparatus, is not guilty of any negligence, and an injunction, such as is asked for, would compel it to close its works. On the other hand, the injury done to the plaintiff is occasional, depending upon the direction of the wind. It is comparatively small, not amounting to over $25 a year.

In Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567, the court decided to grant an injunction. In that case it said that the remedy at law was not adequate. The trees and vines of the plaintiff were being destroyed, and no one could be compensated for such a loss. It also stated that the fact that the nuisance was only occasional, as in this case, was not, in itself, an answer to the claim for an injunction. But the court also said 'that where the damage to one complaining of a nuisance is small or trifling, and the damage to the one causing the nuisance will be large, in case he be restrained, the courts will sometimes deny an injunction. And it went on to show that the damages in that case to the defendant, Seaman, would not be large. Substantially the same proposition is stated in Riedeman v. Mt. Morris Electric Light Co., 56 App. Div. 23, 67 N. Y. Supp. 391. "In exercising its jurisdiction," the court says, "a court of equity always considers. the equities presented in the particular case in which it is asked to interfere; and it is the rule that, where an injunction would cause serious injury to an individual or the community at large and a relatively slight benefit to the party asking its interposition, injunctive relief will be denied and the parties left to their remedy at law."

Such a case is presented here. A permanent injunction would do so great damage to one party, and give comparatively so small a relief to the other, that it should not be granted. The only real reason for granting it would be to prevent a multiplicity of suits; but, in view of the amount of the damages sustained and the provisions of the Code with regard to costs, as a practical matter an injunction is not necessary for that purpose.

I therefore come to the conclusion that the plaintiff's complaint must be dismissed, but without costs. Proper findings may be prepared, and, if not agreed upon, will be settled upon due notice.

Complaint dismissed, without costs.