Edward J. Greenfield, J.
As the public consciousness becomes increasingly sensitized to the problems raised by the interaction of humanity and environment, and the terms “ ecology” and “ pollution ” achieve currency, ingenious lawyers always eager to pioneer and push outward the prior limits of the law will inevitably attempt to predicate some form of legal liability upon sins against the environment. This is such a case, apparently a matter of first impression in this State, raising the question of whether the creation of noise in and of itself gives rise to an actionable tort.
What is involved is a claim by plaintiff corporation, as embodied in its complaint, that the noise created by the defendants during the course of excavating and constructing an adjacent new building so impinged upon and impaired the operation of its rehearsal studio business as to warrant recovery of damages of $200,000. Defendant Civetta Excavating Incorporated, contending that plaintiff’s allegations make out no actionable case of liability, moves to dismiss the first four causes of action.
The first cause of action alleges that plaintiff, which leased space on the fourth floor of premises on West 57th Street in New York City for use as rehearsal studios and for auditions and classes in the field of music and the dramatic arts, had its busi *1079 ness substantially impaired by Civetta’s blasting operations and the driving of piles preparatory to the construction of a new 47-story office building contiguous to its premises, depriving it of the quiet atmosphere and tranquility indispensable to the proper functioning of its business. This first cause of action is premised upon a theory of absolute or strict liability.
The second cause of action sounds in negligence. It is alleged that the excessive noises and vibrations in the course of construction were occasioned by the neglect and failure of Civetta to use alternative methods and equipment to minimize the volume and intensity of the noise and vibrations, despite the complaints of plaintiff.
The third cause of action is grounded in nuisance, and the fourth alleges trespass. Compensatory damages of $100,000 and punitive damages of $100,000 are sought, as well as counsel fees pursuant to CPLR 8303.
In contending for a doctrine of absolute liability for damage caused by excessive noise, plaintiff seeks to draw an analogy with the liability now imposed in blasting cases. In Spano v. Perini Corp. (25 N Y 2d 11, 15 [1969]), Chief Judge Ftjld, announcing for the court a change in prior New York doctrine, declared: “In our view, the time has come for this court to make that ‘ announcement ’ and declare that one who engages in blasting must assume the responsibility, and be liable without fault, for any injury he causes to neighboring property.”
In Spano (supra), the concussion from the blasting, for which absolute liability was imposed, wrecked a garage and an automobile contained therein and recovery for property damage was permitted. Plaintiff here seeks to extend the Spano doctrine at both ends, to comprehend not only the damages occasioned by shock waves but by sound waves as well, and to permit recovery not only for tangible, physical damage, but for the destruction of immeasurable intangibles — peace, silence and tranquility, and the consequential impairment of earnings.
Can the imposition of absolute liability in blasting cases really be analogized to permit recovery without fault for the transmission of noise? Blasting sets in motion shock waves which may have impact on physical property far removed from the site of the blasting, but distance is no bar to recovery once the causal connection is established. Nor does invisibility of the causative factor preclude recovery. Sound is real. Its effects may have genuine impact. Under certain circumstances, recovery might be had for the “ invisible invasion ” by sound waves just as for invasion by other incorporeal forces without tangible impact,
*1080 such as gases or smoke. Indeed, sound waves of the highest intensity, as exemplified in sonic boom may give rise to recovery for physical damage. (United States v. Gravelle, 407 F. 2d 964; Neher v. United States, 265 F. Supp. 210, 217.) Plaintiff here, however, seeks to go far beyond the recovery for the physical damage to which previous cases of “ invisible invasion ” have been limited. Plaintiff here seeks recovery for the impairment of serenity. Taking the allegations of the complaint at face value on this motion to dismiss, it must be deemed that the defendant’s construction work in fact interfered with full use and enjoyment of plaintiff’s property. These allegations, if legally sustainable, would pose for a trial jury the problem of making a qualitative and quantitative measurement of the intangibles of noise and discomfort. It cannot however be said, no matter how desirable it might be, that everyone at all times has an established legal right to peace, tranquility and a tension-free atmosphere. In the modern world some degree of noise, tension and discomfort is the inevitable concomitant of urban life. Can every allegation of excessive noise require a jury to make a subjective evaluation based on verbal description and distinguish between that degree of noise which is ordinary and predictable and which all must bear, and that degree as exemplified in blasting and sonic boom, which is so unusual and severe as to have tangible impact? Are there justifiable and unjustifiable noises ? Do you measure noise by its necessity or by its impact? “ One who chooses to live in the large centers of population cannot expect the quiet of the country. Congested centers are seldom free from smoke, odors and other pollution from houses, shops and factories, and one who moves into such a region cannot hope to find the pure air of the village or outlying district. A person who prefers the advantages of community life must expect to experience some of the resulting inconveniences. Residents of industrial centers must endure without redress a certain amount of annoyance and .discomfiture which is incident to life in such a locality.” (Bove v. Donner-Hanna Coke Corp., 236 App. Div. 37, 40.)
A person who chooses to reap the advantages of location in an urban society must expect the impingement of that crowded society upon his life. (Campbell v. Seaman, 63 N. Y. 568, 577; Pelletier v. Transit-Mix Concrete Corp., 11 Misc 2d 617.)
Certainly, in any vital, bustling, changing city, demolition and construction will be part of the daily scene. Construction and demolition are noise-generating activities that are bound to have an impact on all nearby. Does the person already on the site, occupying an already constructed frailding have the right to *1081 object to the noise of construction in the subsequently developed site next door? The Court of Appeals answered the question in 1893 when it declared in Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co. (140 N. Y. 267, 278): “ The first occupant in building on his lot exercised an undoubted legal right. But his prior occupation deprived his neighbor of no legal right in his property. The first occupant acquires no right to exclude an adjoining proprietor from the free use of his land, nor to use his own land to the injury of his neighbor subsequently coming there.”
While the ruling in Booth (supra), a blasting case, that there must be a showing of negligence before there could be a recovery has now been overruled by Spano v. Perrini (25 NY 2d 11, supra), the observation by the court in that case that a prior occupant does not acquire a superior right to halt or limit subsequent nearby construction is still sound. Any doctrine which would impose liability and allow recovery of damages against a builder to any persons affected, where that builder is proceeding legally with .standard methods of ^'instruction would effectively proscribe all construction activities.
The noises and annoyances engendered by construction activities are temporary when viewed in the perspective of a building’s total life. Temporary nuisances and disturbances appropriate to the legal development of land and property have legal countenance. (Dixon v. New York Trap Rock Corp., 293 N. Y. 509, 513.) In New York City, where only change is constant, all inhabitants may be permanently afflicted by a succession of temporary conditions. Change exacts its price. We all experience the impact in greater or lesser degree. Generalized impact cannot be particularized in explicit damages. Plaintiff, because it maintains rehearsal studios which were affected by the sound and vibration of construction is in no essentially different position from hundreds or thousands of adjacent offices and stores, the smoothness of whose operations might likewise be affected by the inconvenience. If all of those businesses affected in varying degrees were to be permitted the right to recover for all those construction noises, the scope of liability confronting any prospective builder would be so vast as to immobilize all areas of the city into permanent rigidity.
Sound knows no bounds. Sound waves cannot differentiate between the quiet studio or study, the intense and hectic business office, the noisy factory, or the bustling market place. The originator of noise cannot be held to varying standards dependent upon the identity and characteristics of his neighbor.
*1082 Plaintiff contends that its income from rehearsal studios has been drastically impaired by the noise and vibrations of construction in the adjoining building. Many developments in the neighborhood might similarly affect its income — Carnegie Hall, the focal point which makes plaintiff’s location attractive for rehearsal studios might be demolished. The character of the neighborhood as one hospitable to the arts could change. These, too, would affect plaintiff’s income adversely without any possible claim of liability. And, if there were changes nearby which had a positive impact on one’s business, would the persons , responsible for such change be entitled to a share of the increased proceeds? Income drastically impaired during the course of construction might indeed rise appreciably once a new and large building fully tenanted is located nearby. The special impact. caused by the construction activities gives rise to no special cause of action — certainly not one for the imposition of absolute liability.
The second cause of action is predicated upon the creation of. objectionable noise by the negligent failure of defendant to use the best available technology. Unlike the first cause of action, where recovery is sought because of the impact of the noise regardless of fault, the cause of action grounded in negligence focuses not so much on the result (unusual noise), but on the quality of the act which brings about that result. The complaint here is want of due eare and consideration resulting in the inflicting of foreseeable damage upon another. While neighbors may have to put up with the temporary, and expected discomforts of construction, that construction must nevertheless proceed with the exercise of reasonable care and skill. It is plaintiff’s con-. tention that when building does proceed, it must be done with the available equipment and technology that disturbs the least. (McMenomy v. Baud, 87 Cal. 134; Dauberman v. Grant, 198 Cal. 586.) But failure “ to use the best equipment and technology available ” as alleged in the complaint is not the standard for measuring negligence. The risk to be perceived defines the duty to be obeyed. (Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339.) Plaintiff alleges that its complaints as to the unique harm it would suffer were ignored by defendant. This would certainly establish the awareness by defendant of potential harm, but foreseeability of consequences of the complained of conduct is only one facet of the negligence; the duty owed to others is the other. The obligation to protect others against the potential harm occasioned by one’s own activities is the obligation of reasonableness, and not the obligation of perfection.
*1083 If construction proceeds in an unreasonable manner then liability predicated upon negligence will follow. (Spater, “ Noise and the Law,” 63 Mich. L. Eev. 1373, 1407.) Those criteria from which negligence may be inferred in blasting cases (see Schlansky v. Riegel, 9 N Y 2d 493) do not apply where the allegation is excessive noise. Unlike improper blasting which leaves its mark permanently, excessive construction noises leave no residual tangible impact. The psychological impact is significant only if cumulative and prolonged. The common-law standards of liability for noise, as distinguished from statutory requirements, may be predicated on the failure of a defendant to take reasonable precautions to prevent foreseeable harm. Such liability, however, cannot be grounded solely on allegations of “ unnecessary noises ”, and charges of the use of something other than the ‘ ‘ best equipment and technology ’ Any legally imposed obligation to use only “ the best technology ” in construction would result in rapid obsolescence of existing equipment and inevitable raising of the costs of construction beyond their present almost intolerable levels. If it were charged that defendant, with knowledge of the risks of harm to others, proceeded in its construction in a careless and unreasonable fashion by not using such equipment and technology as reasonable prudence would dictate, then possibly a viable cause of action could be spelled out. Accordingly, the second cause of action is dismissed with leave to the plaintiff to replead a cause of action based upon the criteria of traditional common-law negligence.
The third cause of action alleges that explosions of dynamite produced concussions and vibrations, interfering with plaintiff’s right to the use and enjoyment of its premises in such a way as to constitute a nuisance. A sudden single instance of isolated intrusion upon a neighbor’s right to the continued enjoyment of his property may give rise to damages, but when the interference is unreasonable and continuing, it may constitute a nuisance which could be enjoined or might stand as the basis for financial redress. (McCann v. Chasm Power Co., 211 N. Y. 301.) The basis for a grant of damages is the imposition of a permanent servitude on plaintiff’s land (see United States v. Causby, 328 U. S. 256). Plaintiff deduces from this that ‘ ‘ the excavation and foundation, laying and construction of a 47-floor office building obviously continues over a period of time and becomes thereby a nuisance for which plaintiff may seek financial redress ”.
The cases consistently recognize that the temporary annoyances and inconveniences of construction cannot be considered under the law as nuisances which permanently deprive adjoining
*1084 land of some of its value. (Dixon v. New York Trap Rock Corp., 293 N. Y. 509, 513 supra, Maltbie v. Bolting, 6 Misc. 339.) It is plaintiff’s contention that under its third cause of action, seeking recovery for nuisance, even the use of the best available equipment would entitle it to recovery, as was the case in Boomer v. Atlantic Cement Co. (26 N Y 2d 219). In that case, the deposit of dust particles from the defendant’s cement plant, polluting the air and causing immeasurable damage to surrounding persons and property, was held to justify the payment of damages even though the trial court found that the most modern dust control devices available had been installed in defendant’s plant. Nevertheless, the court declined to issue an injunction which would effectively close the plant down, and concerned itself with the problem of the disparity of economic consequences as between the parties, holding that an award of permanent damages would suffice. Unlike the temporary inconveniences of construction, the dust contamination in Boomer {supra) was a true nuisance of extended duration with no indication that abatement was at hand. Judge Bergait, speaking for the court, commented (pp. 222-223): “A court performs its essential function when it decides the rights of parties before it. Its decision of private controversies may sometimes greatly affect public issues. Large questions of law are often resolved by the manner in which private litigation is decided. But this is normally an incident to the court’s main function to settle controversy. It is a rare exercise of judicial power to use a decision in private litigation as a purposeful mechanism to achieve direct public objectives greatly beyond the rights and interests before the court.
“ Effective control of air pollution is a problem presently far from solution even with the full public and financial powers of government. In large measure adequate technical procedures are yet to be developed and some that appear possible may be economically impracticable.
“ It seems apparent that the amelioration of air pollution will depend on technical research in great depth; on a carefully balanced consideration of the economic impact of close regulation; and of the actual effect on public health. It is likely to require massive public expenditure and to demand more than any local community can accomplish and to depend on regional and interstate controls.
“ A court should not try to do this on its own as a by-product of private litigation and it seems manifest that the judicial establishment is neither equipped in the limited nature of any judgment it can pronounce nor prepared to lay down and implement an effective policy for the elimination of air pollution. This *1085 is an area beyond the circumference of one private lawsuit. It is a direct responsibility for government and should not thus be undertaken as an incident to solving a dispute between property owners and a single cement plant — one of many — in the Hudson River valley.”
The problem of noise pollution presents an even more delicate question of balance, noise being inherently less susceptible to measurement and control. We are making a reasoned start in the direction of placing some limits on the production of excessive noise. New York City has just adopted a forward-looking noise control code. Such legislative enactments, which carefully spell out devices which can be used for measurable limitations on the production of noise are a tentative start, but what is done on legislative or administrative basis after careful technological studies cannot be duplicated by a jury of 12 laymen fixing their subjective impressions in a verdict for damages.
Two cases are cited by plaintiff in which the recoveries were premised in whole or part on the creation by defendants of continuing noise production on contiguous property (Dennison v. State of New York, 22 N Y 2d 409 and State v. Board of Educ. of City of Elizabeth, 116 N. J. Super. 305). Both involved making compensatory awards for a partial taking of property in the construction of roads with their attendant and permanent noise adjacent to previously quiet premises. In the Dennison case (supra), the Court of Appeals affirmed the award for a partial taking of property for a road, the noise being considered as one of a number of factors in determining the decrease in value to the remaining property. The court distinguished, however, the situation of adjoining property owners who are subjected to noise on a newly constructed highway where no part of their property has been taken. (Mathewson v. New York State Thruway Auth., 11 A D 2d 728, affd. 9 N Y 2d 788; Bennett v. Long Is. R. R. Co., 181 N. Y. 431; Nunnally v. United States, 239 F. 2d 521.) The observation of Judge Bebgan in his dissenting opinion (p. 415) in the Dennison case as to traffic noise is equally applicable to the problem of construction noise in that:
“ Traffic noise on highways and streets is a universal condition of modern life. The nearer one gets to the beneficial public conveniences of rapidly moving transportation, the more pervasive the noise. * * *
“ It can be heard with more or less intensity for remarkable distances. That it has, indeed, a consequence on market value wherever it is heard is undoubtedly true. But there are some *1086 unpleasant consequences of modern Ufe which are not the proper subject of damages in a law court.” (Emphasis supplied).
In the Elisabeth Board of Educ. case, an award was made to the school hoard for the sealing of its windows and the installation of air conditioning to shut out noise from an adjoining highway which was built partly on the school’s prior property. In that case, there were careful measurements of decibels before and after the completion of the road. It is clear that this was treated as an item of condemnation award rather than an award of damages for invasion of noise from an outside source, and that the premanent increment of noise would make the conduct of a school impossible unless remedial steps were taken.
The fourth cause of action alleges that the vibrations and concussions of defendant’s blasting operations traveled upon plaintiff’s premises and thereby trespassed, causing direct injury when the excessive noise dispelled the peaceful, quiet and tension-free atmosphere.
Recovery on a theory of trespass has been permitted in blasting cases when debris and other articles land on the plaintiff’s property, causing damage. An invasion by sound waves, however, is quite another matter. While sound waves may be merely different in frequency from waves of vibration or concussion, there is a difference in kind since, except in cases of sonic boom, tangible damage is not present. Light waves, too, may emanate from one property and cross on to another. Motions on one person’s land may set up air currents which travel to the land of another. Odors may emanate in one" place and be wafted elsewhere. Plaintiff can point to no cases, however, demonstrating that such an invisible invasion without tangible consequences creates a cognizable cause of action in trespass justifying damages. “While it is generally assumed and held that a personal entry by the actor is unnecessary for the latter to be a trespasser, his act must result in an invasion by tangible matter; otherwise, there would be no disturbance of possession. Thus, it is not a trespass to project light, noise, or vibrations across or onto the land of another because there is no occupancy of space even for a brief period. Metzger v. Pennsylvania O. & D. R. R., 146 Ohio St. 406, 66 N.E. 2d 203 [1946] [smoke]; Amphitheaters, Inc. v Portland Meadows, 184 Ore. 336, 198 P. 2d 847 [1948] [light]; Waschak v. Moffat, 379 Pa. 441, 109 A. 2d 310 [1954] [gas].” (Keeton, Trespass, Nuisance, and Strict Liability, 59 Col. L. Rev. 457, 468.)
If responsibility is to be imposed for the consequences of invading sound, it should not be twisted to conform to the con *1087 fining strait jacket of the venerable cause of action in trespass, with the inevitable aberrations which arise from anachronisms. We can be sophisticated enough to recognize that the transmission of physical bodies, sight, sound, odor or shock are all forms of the transfer of energy involving comparable activities of protons, electrons and molecules, without having to make the naive assumption that because there is a similarity in principle there can be no distinction in kind.
It is well -to talk of modern necessities creating new traditions, and of refusing to tie hobbled by ancient concepts, but a new tradition, if not to be ephemeral and inherently self-defeating, must be soundly based with a structure erected step by step, the reaching higher being built upon what went before. Counsel for plaintiff is to be commended for his comprehensive, imaginative and forward looking brief, of a quality rarely seen in the hustle and bustle of trial practice, but when he asks the court to create a species of action, or to accommodate existing forms to a frame for which it was not designed, he asks for something well beyond the scope of jural evolution. As has been indicated, courts should tread cautiously where complex forces interact, leaving the competing pressures for alternative goals to the resolutions and compromises of the legislative process, and the investigation and measurement of quantitative impact and qualitative control to scientific expertise, rather than to the haphazard determinations of laymen on a trial jury, swayed by their own individualistic views of “ common sense ”, cognitive norms and -social responsibility.
The motion by defendant Civetta to dismiss the first four causes of action is granted, with leave to plaintiff, if it chooses, to replead the cause of action in negligence based upon common-law standards, rather than the alleged failure to use the best equipment and technology available.