■ John T. Benjamin et al., Appellants, v Nelstad Materials Corp. et al., Respondents. [625 NYS2d 281] —In an action to enjoin a nuisance, the plaintiffs appeal from a judgment of the Supreme Court, Westchester County (Zeck, J.), dated September 20, 1990, which, after a nonjury trial, is in favor of the defendants and against them, dismissing the complaint.

Ordered that the judgment is affirmed, without costs or disbursements.

The plaintiffs, residents of the community of Sutton Manor in New Rochelle, commenced the instant action alleging that the cement manufacturing plant operated by the defendants constituted a nuisance. The plaintiffs specifically complained of, inter alia, the offensive noise and white powder allegedly produced by the plant as well as the alleged unlawful discharge of waste material into the Echo Bay which separates

the plant from the residential area where the plaintiffs live. The plant is a legal, nonconforming use and is located in New Rochelle's heaviest industrial zone.

"[O]ne is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities" *(Copart Indus. v Consolidated Edison Co.,* 41 NY2d 564, 569). As to what constitutes a reasonable use of one's property depends on the circumstances of each case *(see, Campbell v Seaman,* 63 NY 568, 584; *State of New York v Waterloo Stock Car Raceway,* 96 Misc 2d 350).

The dissent's view of the evidence accepts the plaintiff's claims as true, disregards the evidence presented by the defendants, and ignores the proposition that in reviewing the Trial Judge's decision, we must keep in mind that he was in the best position to assess the credibility of the witnesses, having had the advantage of observing them *(see, Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492, 499). Moreover, here, not only did the Trial Judge have the opportunity to see the witnesses, he also, with the parties' consent, personally visited and viewed the site at issue.

Under the circumstances of this case, we decline to interfere with the Trial Judge's conclusion. The record supports his determination that the corporate defendant presently uses the best and most modern equipment and has eliminated most of the noise, dust, and bright lights emanating from the plant *(see, Pelletier v Transit-Mix Concrete Corp.,* 11 Misc 2d 617). Although not conclusive, weight must also be given to the plaintiffs' awareness of the existence of the cement plant on the subject premises prior to purchasing their respective homes *(see, McCarty v Natural Carbonic Gas Co.,* 189 NY 40; *Campbell v Seaman,* 63 NY 568, 584, *supra; Pelletier v Transit-Mix Concrete Corp., supra,* at 584). We therefore agree with the trial court that under the circumstances of this case, the plaintiffs have not sustained their burden of proving that the cement plant constitutes an actionable nuisance. Rosenblatt, J. P., Altman and Florio, JJ., concur.

Friedmann, J., dissents and votes to reverse the judgment appealed from, reinstate the complaint, and remit the matter to the Supreme Court, Westchester County, for additional proceedings.

The cement manufacturing plant at issue here, although a legal, nonconforming use in New Rochelle's heaviest industrial zone, is situated at the border of the plaintiffs' residential district. Many of the plaintiff homeowners appear to have bought their homes prior to 1976, when the defendants purchased the cement plant and began transforming it from a small, quiet operation into the flourishing enterprise it is today. Six plaintiffs testified vividly to the great volume of white dust currently produced by the defendants' plant, and to the routine unlawful discharge of waste material into Echo Bay. In addition, they averred that their domestic lives are rendered unendurable from 6:00 A.M. until 7:00 P.M., six days a week, by, among other things, the revving of unmuffled diesel engines and front-end loaders, the blare of CB radios, the blowing of horns, the slamming of tailgates, the shrieking of back-up beepers, and the rattle of sand and gravel being poured down metal chutes.

As the majority concedes, "one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities" *(Copart Indus. v Consolidated Edison Co.,* 41 NY2d 564, 569). A lawful use of property can constitute a nuisance if a business is not conducted with due or reasonable regard to the health, comfort and convenience of those living in the vicinity *(see,* 81 NY Jur 2d, Nuisances, § 15, at 330-331).

My review of the record indicates that the evidence at trial established that the defendants' actions are negligent, reckless, unreasonable, and frequently intentional in the pollution-producing conduct of their cement manufacturing facility, which they operate without due regard for the health, comfort, and convenience of those residing nearby. The minimal alterations they have made to their burgeoning business over the past several years have been less a good-faith attempt to cooperate with their neighbors than modifications undertaken to facilitate their continuing expansion.

Thus, notwithstanding the trial court's and this Court's finding to the contrary, no evidence at all was adduced by the defendants regarding their adoption of "the best and most modern equipment" *(Pelletier v Transit-Mix Concrete Corp.,* 11 Misc 2d 617, 624) to decrease the extraordinary noise and dust pollution generated by their enterprise, except for the defen-

dant Caposella's self-serving testimony that he knew of no other procedures or machinery that he could install to diminish his company's pernicious side-effects. Surely the fact that the defendants complied with the requirements of the City of New Rochelle, before it would sanction their continued expansion, that they put mufflers on their unmuffled vehicles and cease beaming their brilliant security lights into the residential community (which actions the defendants had initiated to punish neighbors who had complained about their operations) hardly qualifies as good faith efforts at remediation, let alone installation of the best and most modern equipment.

In the area of remediation, the defendant Caposella admitted at the trial that great quantities of white dust are produced in the cement-making process, and that he had recently purchased a new filtering machine to better control the problem, although for unexplained reasons he had not yet installed it. Pictures of these dust clouds were admitted into evidence, and the plaintiffs testified to observing the dust as it drifted from the defendants' plant onto their property and into their houses and yards. In this regard, the trial court's unexplained finding that the plaintiffs had not proved a causal connection between the operation of the defendants' plant and the white dust that blanketed their property—obliging them to install special windows to keep the dust out of their homes —is difficult to understand.

The trial court further credited the defendants with good-faith efforts at noise abatement in that they had installed a six-foot high, wooden picket fence around their property. However, even the defendants' noise expert—who testified that such a fence could reduce the noise escaping from the plant by as much as 10 decibels, although he conceded that he had taken no measurements—admitted that a thick cement wall would be far more efficacious. The court rejected the readings of the plaintiff's noise expert because they were taken before this wooden fence was erected, thereby excluding from evidence that expert's finding that the noise level at the residential district boundary measured 77 decibels, some 12 decibels greater than the maximum permitted by the applicable regulations. Significantly, the defendants' own expert recorded the noise level at the residential perimeter as 69.1 decibels, or 4.1 decibels in excess of the maximum allowed, although he explained that he took his measurements at a time when construction workers nearby were "chopping * * * concrete" with "jack hammers". The defendants' expert did not explain why he did not remeasure the ambient noise

levels at a time when they would not be subject to such obvious distortion.

In summary, the instant record does not reflect that the defendants are using the best and most modern equipment, or that their plant is in conformity with usual custom and proper practice, or that all of the noises and other nuisances about which the plaintiffs testified have been voluntarily eliminated, diminished, or corrected *(cf., Pelletier v Transit-Mix Concrete Corp.,* 11 Misc 2d 617, 620-622, *supra).* Rather, the record indicates that the defendants have resisted all pleas to reduce the noise, air, and water pollution generated by their operation, and have even deliberately and systematically increased these nuisances when they wished to punish local residents who had complained about the plant. These punitive measures have included directing their crane operator to repeatedly drop his crane bucket onto a metal plate, instructing their drivers to slam their truck tailgates as they enter and leave the plant premises, turning up their diesel truck beepers, and beaming brilliant security lamps onto the homeowners' property throughout the night.

Under these circumstances, I would remit the matter for further hearings to consider whether the plaintiffs should be awarded monetary damages based upon permanent nuisance unless, after an exploration of the usual custom and proper practice in the industry, the defendants undertake the most effective remedial measures available and financially susceptible of implementation to abate the intolerable problems they are causing to the neighboring residential community.